O

# United States District Court
# Central District of California

|  |  |
|---|---|
| RAMON ELIZARRAZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED RENTALS, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case № 2:18-CV-09533-ODW (JC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [14]** |

## I.   INTRODUCTION

Plaintiff Ramon Elizarraz ("Plaintiff") brought this putative class action against United Rentals, Inc. ("Defendant"). Plaintiff filed his Complaint on October 9, 2018 in Los Angeles Superior Court alleging eight causes of action: (1) Unpaid Overtime; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Final Wages Not Timely Paid; (6) Non-Compliant Wage Statements; (7) Unreimbursed Business Expenses; and (8) Unfair Competition/Unfair Business Practices. (Compl. ¶¶ 42-98, ECF No. 2-1.) On November 9, 2018, Defendant removed the case, claiming federal jurisdiction under the Class Action Fairness Act

("CAFA"), 28 U.S.C. § 1332(d)(2). The Court finds that jurisdiction exists under CAFA and **DENIES** Plaintiff's Motion to Remand.[1]

## II. BACKGROUND

### a. Factual Background

Plaintiff brought a class action against Defendant on behalf of himself and the class he seeks to represent (collectively "Plaintiff Class"). Plaintiff Class consists of all current and former California-based hourly-paid or non-exempt employees employed by Defendant within the State of California at any time during the period from four years preceding the filing of the Complaint to final judgment in this case. (Compl. ¶ 12.) Plaintiff is a citizen of California. (Compl. ¶ 5.) Defendant is a Delaware Corporation. (Compl. ¶ 6.) Plaintiff alleges that Defendant hired Plaintiff and other class members and classified them as hourly-paid, non-exempt employees, and failed to compensate them for all hours worked, missed meal periods, and/or missed breaks. (Compl. ¶ 18.) Plaintiff does not allege a specific number of violations, nor a specific amount of damages, but he alleges that the aggregate claims are below the $5,000,000 threshold for federal jurisdiction. (Mot. to Remand ("Mot.") 1, ECF No. 14.)

### b. Procedural History

Plaintiff's complaint was filed in Los Angeles Superior Court on October 9, 2018. (Compl., ECF No. 2-1.) On November 9, 2018, Defendant removed the case. (Notice of Removal ("Notice"), ECF No. 2.) Plaintiff moved to remand on December 10, 2018. (Mot.) This motion is now before the Court.

## III. LEGAL STANDARD

Defendant removed this case pursuant to 28 U.S.C. § 1441, claiming that this Court has original jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2). CAFA allows for federal jurisdiction over a purported class action when (1) there is an amount in controversy ("AIC") exceeding $5,000,000; (2) at least one putative class member is a

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

citizen of a state different from defendant; and (3) the putative class exceeds 100 members. 28 U.S.C. § 1332(d)(2). Generally, removal statutes are strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* "[T]he burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). If the alleged AIC is disputed by the plaintiff, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

Under CAFA, attorney's fees are properly included in the calculation of the AIC. *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 at *6 (N.D. Cal. Mar. 1, 2012) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007)).

## IV. DISCUSSION

The parties do not dispute that the Plaintiff Class is made of more than 100 individuals and that the parties are minimally diverse as required by CAFA. Thus, the only issue is whether Defendant has demonstrated by a preponderance of the evidence that the AIC is greater than $5,000,000. For the reasons that follow, the Court finds that Defendant has met its burden, and this Court has jurisdiction under CAFA.

### a. Meal and Rest Period Claims

Defendant calculated the amount owed in penalties for missed meal and rest period violations at $16,131,402, which is based on a violation rate of 50% for missed meal periods and 25% for missed rest breaks. (Mot. 9–10.) In other words, Defendant assumed Plaintiff Class missed 2.5 out of 5 meal periods per week and 2.5 out of 10 missed rest periods per week. (*Id.*) Plaintiff contests this calculation and argues that

the Court should calculate the amount of damages in terms of the number of workdays per workweek an employee is deprived of meal and rest breaks. (*Id.* at 13.) Plaintiff contends that Defendant's AIC calculation for meal and rest period violations is "implausible because it is based entirely upon unsupported assumptions." (*Id.* at 12.) According to Plaintiff, these unsupported assumptions are due to Defendant's failure "to provide competent evidence of the hourly rate of pay and workweeks," instead basing its AIC calculation on "unverified figures." (*Id.*) Additionally, Plaintiff contends that the "pattern and practice" language from the Complaint does not support the violation rates relied upon by Defendant. (*Id.*)

Defendant relied upon the "pattern and practice" language in the Complaint, and the Declaration of Cary Elliott in determining the AIC. (Notice 6; Decl. of Cary Elliott ("Elliott Decl."), ECF No. 5.) Mr. Elliott is a Senior Economist at an economics and statistics consulting firm. (Elliott Decl. ¶ 1.) Mr. Elliott holds a Ph.D. in economics with a primary focus on labor economics and specializes in applying advanced statistical techniques to labor and employment litigation matters. (*Id.*) Mr. Elliott asserts that he was provided payroll data files for current and former non-exempt employees of Defendant for the period of October 1, 2014 through February 15, 2018. (*Id.* ¶ 2.) These files contain information about employee work hours, earnings, dates of employment, and locations. (*Id.*) For the period of October 9, 2014, through February 15, 2018, Mr. Elliott testifies to such data as the average rate of pay for a Defendant employee, the number of non-exempt employees employed by Defendant, the number of workweeks those employees worked during this period, and the number of non-exempt employees whose employment ended during this period. (*Id.* ¶¶ 3–5.) Mr. Elliott additionally testifies that non-exempt employees of Defendant worked, on average, about five days per week from October 9, 2014, to the present. (*Id.* ¶ 7.)

Defendant also submitted the Supplemental Declaration of Cary Elliott. (Supplemental Decl. of Cary Elliott ("Elliott Supplemental Decl."), ECF No. 16-1.) The Supplemental Declaration provides additional information and updates calculations

made in Mr. Elliott's original declaration. (Elliott Supplemental Decl. ¶ 3.) Mr. Elliott's Supplemental Declaration also explains the methodology behind each calculation he used in estimating the AIC. (*See generally* Elliott Supplemental Decl.)

While Plaintiff contends that the language "pattern and practice" could "easily be once every two weeks, once a month, or once every three months," (Mot. 12), it is entirely reasonable for Defendant to allege a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods. Further, Defendant conservatively alleged a 50% and 25% violation rate, and in any case numerous courts have found a 100% violation rate appropriate, which the Court will discuss herein.

Additionally, Plaintiff's contention that Defendant fails to provide competent evidence of the hourly rate of pay and workweeks is unfounded. At the current stage of litigation, Defendant need not "produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy." *Long v. Destination Maternity Corp.*, No. 15CV2836-WQH-RBB, 2016 WL 1604968, at *6 (S.D. Cal. Apr. 21, 2016) (internal quotation marks omitted). *See also Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4–5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages . . . at this premature (pre-certification) stage of the litigation."). A defendant need only prove the amount in controversy by a preponderance of the evidence and may do so by a declaration or affidavit. *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Mr. Elliott established sufficient foundation for his testimony. He is a senior economist, holds a Ph.D. in economics, specializes in applying advanced statistical techniques to labor and employment litigation matters, and was provided the relevant data in relation to this case. (Elliott Supplemental Decl. ¶¶ 1–2.) The Declaration and the Supplemental Declaration of Cary

Elliott provide adequate evidence that by a preponderance of the evidence, the AIC exceeds the jurisdictional threshold.

In his meal and rest period claims, Plaintiff alleges that "[a]s a pattern and practice" Defendant required Plaintiff and Plaintiff Class to work during meal and rest periods and failed to compensate Plaintiff and Plaintiff Class for work performed during meal and rest periods. (Compl. ¶¶ 58–59, 67–68.) Based on this, Defendant assumes a 50% violation rate for the meal periods and a 25% violation rate for the rest periods. (Notice 8.) Pursuant to the applicable Industrial Welfare Commission (IWC) Wage Order and California Labor Code § 226.7(b), each class member is entitled to recover one hour of pay for each work day that a meal period was not provided and also one hour of pay for each work day that a rest period was not provided.

Numerous courts have found a 100% violation rate reasonable (i.e., missed meal period and missed rest period every day), yet Defendant conservatively assumes a 50% violation rate for the meal violations and a 25% violation rate for the rest period violations. *See Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013) (100% rate approved when "meal break policy resulted in non-exempt employees not receiving meal periods."); *Alvarez v. Limited Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007) (100% rate approved when plaintiff alleged rest period violations made it "virtually impossible for defendant's employees to take meal periods and rest breaks."); *Muniz*, 2007 WL 1302504, at *4 (100% rate approved when class members were "not always provided" lawful meal or rest periods.).

Many courts, including this Court, have also found the conservative violation rate of 50% proper. *See Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 2:18-CV-03054-ODW (ASx), 2018 WL 3046965, at *3 (C.D. Cal. June 19, 2018) (finding a 50% violation rate reasonable where plaintiff alleged that defendant forced class members to "often forego a meal period and/or work during their meal period . . . ."); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate for

the meal period claim and a 30% violation rate for the rest period claim proper where the complaint offered no guidance as to the frequency of the violations alleging only that Defendant had a "policy and practice" of meal and rest period violations. "Defendant conservatively assumed the putative class members were not provided three of the five meal periods and three of ten rest periods they were entitled to receive each work week."); *Oda v. Gucci Am., Inc.*, Nos. 2:14-CV-7468-SVW (JPRx), 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums, that class members sometimes did not receive all of their meal periods and that not all rest periods were given timely).

Here, Defendant used Plaintiff's allegations of a "pattern and practice" to assume violation rates of 50% for the meal period claim and 25% for the rest period claim. As stated above, courts have found violation rates of 50% proper with language such as "policy and practice." In light of Plaintiff's allegations of a "pattern and practice" of meal and rest period violations, and the calculations of Mr. Elliott, the Court finds a violation rate of 50% for the meal period claim and 25% for the rest period claim reasonable. Since these claims alone put the AIC over the jurisdictional threshold, the Court declines to analyze whether the rest of Plaintiff's claims satisfy the AIC.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

April 9, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**